UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL TREMORE,

        Plaintiff,

Case No. 1:18-cv-190

Hon. Ray Kent

v.

JERRY BOS VENDING SERVICE, INC.,

        Defendant.

        _____/

**OPINION**

        Plaintiff Michael Tremore brought this action against defendant Jerry Bos Vending Service, Inc., claiming that defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., by failing to pay plaintiff wages and overtime. This matter is now before the Court on motions for summary judgment filed by plaintiff (ECF No. 27) and defendant (ECF No. 29).

        **I.    Plaintiff's claim**

        Plaintiff set forth the following facts in his complaint. Defendant Jerry Bos Vending, Inc. ("Bos Vending") employed plaintiff in June 2016. Compl. (ECF No. 1, PageID.2). "Tremore's primary function was to fill vending machines and collect money at Bos Vending accounts througout West Michigan." *Id*. Tremore was initially paid hourly for his employment as a route driver. *Id*. at PageID.3. He worked overtime in June 2016 and was paid overtime. *Id*. On or about July 13, 2016, Bos Vending started to pay plaintiff a weekly salary of $800.00. *Id*. Plaintiff was the only route driver paid a salary. *Id.* After July 13, 2016, plaintiff no longer received overtime pay when he worked more than 40 hours per week and was improperly classified as an

"exempt" employee from overtime. *Id.* Plaintiff was terminated on November 18, 2017. *Id.* at PageID.4.[1] The gist of plaintiff's claim is that defendant treated him as a salaried employee exempt from overtime pay, when he was actually just an hourly employee. Plaintiff seeks compensatory damages for wages, compensatory damages for unpaid overtime, liquidated damages, attorney fees, and injunctive relief.

## II.  Legal Standard for summary judgment

All defendants have moved for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

---

[1] Plaintiff also alleged that he filed a complaint with the Wage & Hour Division of the State of Michigan, that defendant tendered a check for the amount of disputed overtime, but that defendant later "revoked the overtime payment." Compl. at PageID.4. While plaintiff's complaint implies that defendant acted unilaterally, the record reflects that the proceeding at the Wage & Hour Division was a nullity because that agency never had jurisdiction of plaintiff's claim. *See* Letter from Mich. Dept. of Licensing and Regulatory Affairs (Jan. 5, 2018) (ECF No. 28-14) (advising plaintiff that, "Based upon investigation of your complaint, it has been determined that the Michigan Minimum Wage Law and its overtime provisions do not apply.").

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### III. Discussion

The FLSA requires employers to pay overtime wages to nonexempt employees who work in excess of forty hours per week. 29 U.S.C. § 207(a)(1). The threshold question for the Court is whether plaintiff was exempt from the overtime provisions of the FLSA. For that reason, the Court will address defendant Bos Vending's motion for summary judgment, in which it contends that plaintiff was exempt from this requirement under the outside sales exemption, 29 U.S.C. § 213(a)(1), and the local delivery exemption, 29 U.S.C. § 213(b)(11).

#### A. Outside Sales Exemption

The Sixth Circuit explained the outside sales exemption in *Killion v. HeHE Distributors, LLC*, 761 F.3d 574 (6th Cir. 2014) stating as follows:

> In *Christopher* [*v. Smithkline Beecham Corporation*, 567 U.S. 142, 132 S.Ct. at 2162-63 (2012)] the Supreme Court set out the relevant legal background as follows:

3

> The overtime compensation requirement [of the FLSA] does not apply with respect to all employees. See § 213. As relevant here, the statute exempts workers "employed . . . in the capacity of outside salesman." § 213(a)(1).
>
> Congress did not define the term "outside salesman," but it delegated authority to the [Department of Labor (DOL)] to issue regulations "from time to time" to "defin[e] and delimi[t]" the term. *Ibid*.

The Court also set forth the background of three of the regulations issued by the DOL:

> Three of the DOL's regulations are directly relevant to this case: §§ 541.500, 541.501, and 541.503. We refer to these three regulations as the "general regulation," the "sales regulation," and the "promotion-work regulation," respectively.
>
> The general regulation sets out the definition of the statutory term "employee employed in the capacity of outside salesman." It defines the term to mean "any employee . . . [w]hose primary duty is . . . making sales within the meaning of [29 U.S.C. § 203(k) ]" and "[w]ho is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." §§ 541.500(a)(1)-(2). The referenced statutory provision, 29 U.S.C. § 203(k), states that " '[s]ale' or 'sell' includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition."  Thus, under the general regulation, an outside salesman is any employee whose primary duty is making any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition.
>
> The sales regulation restates the statutory definition of sale discussed above and clarifies that "[s]ales within the meaning of [29 U.S.C. § 203(k)] include the transfer of title to tangible property, and in certain cases, of tangible and valuable evidences of intangible property." 29 C.F.R. § 541.501(b).
>
> Finally, the promotion-work regulation identifies "[p]romotion work" as "one type of activity often performed by persons who make sales, which may or may not be exempt outside sales work, depending upon the circumstances under which it is performed." §

4

> 541.503(a). Promotion work that is "performed incidental to and in conjunction with an employee's own outside sales or solicitations is exempt work," whereas promotion work that is "incidental to sales made, or to be made, by someone else is not exempt outside sales work." *Ibid*.

(Footnotes omitted.)

In addition to the regulations identified by the Supreme Court in *Christopher*, two other DOL regulations bear on the present case. The first is 29 C.F.R. § 541.700, which instructs that

> [t]o qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work . . . . Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

*Id*. § 541.700(a). "The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee." *Id.* § 541.700(b).

Also relevant to this case is 29 C.F.R. § 541.504, titled "Drivers who sell," which both parties agree provides a close analogy to the considerations at issue. That regulation specifies as follows:

> (a) Drivers who deliver products and also sell such products may qualify as exempt outside sales employees only if the employee has a primary duty of making sales. In determining the primary duty of drivers who sell, work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including loading, driving or delivering products, shall be regarded as exempt outside sales work.

5

> (b) Several factors should be considered in determining if a driver has a primary duty of making sales, including, but not limited to: a comparison of the driver's duties with those of other employees engaged as truck drivers and as salespersons; possession of a selling or solicitor's license when such license is required by law or ordinances; presence or absence of customary or contractual arrangements concerning amounts of products to be delivered; description of the employee's occupation in collective bargaining agreements; the employer's specifications as to qualifications for hiring; sales training; attendance at sales conferences; method of payment; and proportion of earnings directly attributable to sales.

*Id*. § 541.504(a), (b). The Supreme Court has also instructed that "exemptions in the Fair Labor Standards Act are to be narrowly construed against the employers seeking to assert them." *Sandifer v. U.S. Steel Corp.*, -- U.S. --, 134 S.Ct. 870, 879 n. 7, 187 L.Ed.2d 729 (2014) (internal quotation marks omitted).

*Killion*, 761 F.3d at 581-82.

To paraphrase the relevant issue presented in *Killion*, "This case turns on two questions: (1) do[es] the plaintiff[] make sales, and, (2) if so, is making sales [his] primary duty?" *Id*. at 583. Based on the record before the Court, there is no genuine issue of material fact with respect to the first question. In this regard, plaintiff admitted that his job included sales, stating that he "was able to secure the new FedEx facility as a customer on my route." Tremore Aff. (ECF No. 28-2, PageID.105). However, a genuine issue of material fact exists with respect to whether making sales was the primary duty of plaintiff and the other route drivers.

The record reflects that defendant's drivers were expected to deliver and sell goods. In his affidavit, John Bos (an officer of Bos Vending) stated: that he manages a staff of 12 route drivers to service over 600 locations in the West Michigan area; that route drivers are responsible for taking orders from customers and fulfilling orders; that route drivers are encouraged to grow

6

accounts on their respective routes; that it is the industry standard to pay route drivers on a commission basis; that route drivers are compensated based upon what they produce; and, that plaintiff was advised that he was being hired for a commission job.. Bos Aff. (ECF No. 33-1, PageID.268-269). After a few weeks of training, plaintiff did not believe that he could make enough money driving the route on commission, and that "[t]he Company agreed to temporarily pay [plaintiff] a salary, different than all other route drivers, and only until his training was complete and he was confident in his ability to run the route efficiently." *Id*. Based on this record, a question of fact exists as to whether plaintiff's job was primarily that of a delivery driver or a salesman working on commission.

### B. Local delivery exemption

Next, Bos Vending contends that plaintiff is also an exempt employee under the local delivery exemption. As one court explained:

> Section 213(b)(11) provides that the overtime provisions of the Act do not apply to "any employee employed as a driver or driver's helper making local deliveries, who is compensated for such employment on the basis of trip rates, or other delivery payment plan, if the Secretary [of the Department of Labor] shall find that such plan has the general purpose and effect of reducing hours worked by such employees to, or below, the maximum workweek." Significantly, the aforementioned finding by the Secretary is an "explicit prerequisite[] to exemption." 29 C.F.R. § 551.1. The exemption cannot apply unless the employer files a petition with the Department of Labor for an exemption and the petition is granted. See 29 C.F.R. § 551.3 ("Any employer desiring to establish an exemption from the overtime pay requirements of the Act . . . under section 13(b)(11) may petition the Administrator, in writing."); 29 C.F.R. § 551.6(b) ("If the Administrator determines that a petition meets all requirements . . . [then] the Administrator will make an appropriate finding to this effect, and notify the petitioner.").

7

*Fernandez v. Kinray, Inc.*, No. 13CV04938LDHSMG, 2018 WL 1542665 at *6 (E.D.N.Y. March 28, 2018). In *Ferndandez*, the court summarily rejected the defendant's claim because "No such petition was filed let alone granted in this case." *Id*. This Court rejects Bos Vending's claim for the same reason.

### C. Whether Tremore worked overtime and, if so, the amount of time

Finally, both sides seek summary judgment on the issue of the amount of overtime which plaintiff allegedly worked. In his affidavit, plaintiff stated that he accessed the "Google Timeline" application on his cell phone to calculate how many hours he worked for Bos Vending and compare that to how many hours he had been paid for working. Tremore Aff. at PageID.105). Plaintiff stated that he used Google Timeline data to file his complaint with Michigan's Wage & Hour Division, in which he claimed an hourly pay rate of $30.00 for 897 hours of overtime, for a total amount due to him of $26,910.00. *Id*.; Michigan Claim (ECF No. 28-10, PageID.153). In reviewing the briefs, the Court notes that plaintiff's discussion of the Google Timeline methodology is not informative. In addition, the charts and maps (ECF Nos. 28-8 and 28-9) submitted to the Court consist of raw data with at most cursory explanations. Nevertheless, viewing all of the evidence in the light most favorable to plaintiff, the Court concludes that plaintiff has presented sufficient evidence on which a jury could reasonably find that he worked more than 40 hours during some weeks. Accordingly, a genuine issue of material fact exists with respect to whether plaintiff worked some overtime and the amount of any such overtime.

**IV.     Conclusion**

For the reasons set forth above, the parties' motions for summary judgment (ECF Nos. 27 and 29) will be **DENIED**.

Dated:  April 30, 2019                              /s/ RAY KENT
                                                                  Ray Kent
                                                                  United States Magistrate Judge